Good morning. May it please the Court. I'm Brian Rademacher, an attorney with the Federal Public Defender's Office. We represent appellant Jose Lopez. I'll try to reserve four minutes for rebuttal. Lopez stole money from the government. That makes him guilty of theft. But it doesn't make his statements on the end-of-shift forms knowingly false. To convict Lopez of that, the government had to prove that the coin and currency section of the form required cashiers to report the amount of money that should have been in the register, not the amount of money that was actually in the register at the end of the day, which is what Lopez reported. The government didn't and can't prove this for three reasons. First, the coin and currency section itself asks for the amount of money by denomination of what's present at the end of the day. Second, the only testimony at trial about how cashiers are supposed to fill out the form is that they should always use the amount of cash that's in the register. And third, a common understanding of what cashiers do at the end of their shifts is to count the amount of money that's in the drawer and to balance it against what the cash register tape says is in the drawer. This shows that when Lopez used the amount of cash that was in the drawer at the end of the day, he provided the exact information that the government's form requested, or he did so at least according to a reasonable interpretation of what the form requested. So as a matter of law, that means his statements on the form are not knowingly false and that the district court should not have let this case go to the jury for deliberations because the jury only would have been able to base its verdict on speculation about whether Lopez understood the form the way the government interprets it. What's the practical consequence if we were to set aside the lying counts? The actual consequence? Yes. It probably has no effect on a sentencing, but it certainly would vacate whatever it is, 20-some counts, felony counts. But it would probably have to go back to the district court for resentencing, even though it probably would not make any difference. It wouldn't change the result given the statutory periods? I don't think so, Your Honor. But he was given probation for all the counts. He got 36 months' probation. Right. He's on probation. I would assume on resentencing he'd be given probation as well. Yeah. I'd like to talk a little bit about the end-of-the-shift form. That appears in our Volume 3 of the excerpts of record. It's the document at 305 as one example. Now, it has two parts, but the government agrees the only section that's at issue in this case is the coin and currency section on the top part of that form. And that's because that's what formed the basis for the false statement charges in the indictment. Now, this section asks for the currency and coin by denomination as well as the amount of checks and credit slips. While the form gives no guidance about how it's supposed to be filled out, it certainly appears to mean the amount of cash and credit and checks that are in the cash register at the end of the day. That was the government's position at trial. In fact, it told the jury in opening, quote, at the end of the shift he, Lopez, is supposed to account for the money that he received. That means he has to take all cash out of the drawer, add it up, and put it down in the form. I would submit that that alone is a validation for why the interpretation that it should be the amount of money that's in the cash register and not that's supposed to be in the cash register but was entered is at least a reasonable interpretation, if not the only interpretation. So if he puts money in his pocket, I guess it's not in the cash register and he doesn't need to report it. Is that right? That's correct because the form only asked for what was in the cash register. That kind of really stretches credulity in terms of looking at it. It's basically saying, oh, it's currency and coin. Well, I took out three hundreds and two fives. So what do I have in my cash register? I have two hundreds less and two fives less. And so your argument is that he's then supposed to fill out the form as to what is, quote, in the cash register. Well, that's because what the cash register – that's what the form requires. If you take a look at the form and there's – As opposed to what's supposed to be in the cash register? Correct. I mean, that doesn't seem to be a common sense interpretation for someone. Of the form. Well, it actually is a common understanding. Well, I guess the question then, let's say you – there was even by some wild stretch this interpretation possible given the evidence in front of the jury. Why couldn't the jury have – why wouldn't it conclude as it did? Well, the question is whether the form is fundamentally ambiguous. And all that requires – and that's a legal question that the Court needs to decide. Okay. It's a question of legal sufficiency. And to be fundamentally ambiguous, it only means that there has to be a reasonable interpretation that makes Lopez's statement correct. That means the government has to negative the requirement. Any reasonable interpretation, the form just requires the amount of cash that's in the drawer. In this area of law, to be knowingly false, it's important for the government to be precise about what it's asking for. And would you have suggested a little asterisk, please also include the amount that you stole? Well – I mean, is that what they would have to do to make this form unambiguous? I think it would have to change the form. And there are some cases, I think it was the Light case itself, which said that we can't lay the blame for impreciseness on the defendant. It has to be laid at the government's table. And in that case, there was an old form. Actually, it may have been the Monopod case. But the government's – or the Court suggested that the reasonable way that this has to be dealt with is for the government to change its form. I'm asking you what would you put on the form to make it unambiguous. It could be as simple as how many permits did you receive from the issuing officer. That would be one way to deal with it. Or it could say clearly how much money was supposed to be collected and not entered. There are a number of different ways. Well, I mean, that strikes me as completely odd, both those suggestions, because we're talking about accounting, not necessarily permits. I mean, you can have a separate column for permits. But I think the common presumption is that you're supposed to put the money in the cash register instead of your pocket. And if you don't put it in the cash register, you can't absolve yourself by saying, well, I didn't know that I could – that I should have added in the money I stole. And he's not being absolved from theft. I mean, this was an abuse of his position. No, I understand. A violation of the oath of his office. An abuse of trust. But it isn't a knowingly false statement because there's a reasonable interpretation that that's what the form requires. There was testimony – I'm trying to be sympathetic to your argument here. And I see at the top of this sheet it says interim transmittal. So I'm assuming that says I'm transmitting something. Now, was there testimony at trial as to what that phrase at the top of the form meant, interim transmittal? I don't believe so. I think transmittal was just used actually more for the bottom section of the form, that it was transmitting the data that was in the tape register onto the bottom section of the form. I can understand that one purpose of this form is that the government or, you know, whoever's money it is – and this doesn't have to be a government form – anybody at the end of the shift who runs the place, owns the place, they want to know how much money is in the cash register. Correct. And you watch – and so he's saying, okay, here's how much money is in the cash register so that if somebody steals later, then you know that. Now, is there any testimony from the government as to what the purpose of the form is or any other testimony from your side as to what the purpose of the form is? I think the only testimony about what the purpose was is that they – the main agent, Agent Soto, who was the supervisor and trainer of cashiers, talked about how they review the forms and that they often catch discrepancies in either machine error or in cashier error, such as adding up or giving out the wrong amount of change or pushing the wrong number of buttons. She and another supervisor talked about how the machine actually was spitting out some incorrect numbers, saying that there was no match when there actually was, and that machine had to be replaced. So it really is a common purpose to look at the amount of money that's actually in the cash register and compare it against the amount of money that the tape says, because that's what's going to show whether you're catching cashier error or machine error. Now, the government has no support for its claim that the form required the amount of money that was not entered into the cash register. As a matter of fact, when you take a look at the form, it doesn't make a lot of sense under the government's interpretation, because it's clear, Your Honor, that what the employer wants to know is at least the amount of money in the cash register. But if their interpretation is it's only supposed to be the amount of money that was – should have been in the register. Why do you think they want to know how much money was collected for the day? I'm sorry. How much – why do they want to know how much should have been – should have been put into the drawer? How much was actually collected? Why would the government want to know that? Well, it's important to them. It's important to – Because they've got X number of permits they gave out for X number of dollars, and so that total amount should equal the checks, the credit cards, and the cash, right? Correct. But the government admitted, the prosecutor, and there was agent's testimony, talking about how their system was deficient, that it didn't keep track of the permits, and all they needed was a slight connection. They needed to connect the issuing – the computer of the issuing officer to the cash register, and it didn't do that. The government says, sorry, our accounting system didn't take count – didn't keep track of the number of permits that should have been in the register, and that was a problem, but don't blame the government. But the case law in this area says the government is to blame for that. If its forms are not precise and its systems are deficient, you don't blame the defendant. You change the system. Because only if there is a reasonable interpretation that required just the amount of money that's in the cash register, and that's what they're doing. A number of supervisors testified that's what cashiers and they do at the end of the shift. They count the amount of money that's actually in the register. They use terms like we count the money – amount of money at hand, we count the amount of money in the cash register, we count the physically hand count, the bills and the money in front of them. So, sure, in the end, it wasn't a good way to catch somebody who was stealing money and not entering it into the – but that was their system. And the defendant can't be made to blame for answering the form in the way that the instructions seem to suggest. That's what Agent Soto testified to. She said, and I'll quote that. That's actually in the government's brief on page 16 to 17. She was being asked, can you show us where the money is counted up and quoted by the cashier? In this area here, the currency and coins are separated out by denomination. And who's supposed to fill that out? The cashier. And how is he supposed to know how to put in the different denominations in the amount? By the money he collected off the cash register. That means it was on the cash register and you take it off the cash register. That's the best testimony about what should be done. And that means it's the money in the register that goes on the form. For their interpretation, I'll just make one brief comment and then I'll sit down unless the Court has more questions, but for their interpretation, there should have been a third column on the top of the form. How much money should have been collected as a result of the sale of permits? How much money was actually in the cash register form? And then you total those up because it's important to know. No, because the question is not what should have been collected. What was collected? But that's not the question. The question from the question. You want to make a whole other construct for it of what was, what should have been collected. The question is how much money did that cash register receive? And here you have to write it up. You want to give another column that basically says the person admits that the amount received and the amount I have here are a discrepancy. That's what you would have. I wouldn't. I'm only suggesting that if you accept the government's interpretation, you would need another column because the employers are always going to want to know how much money is in the cash register so they could compare it to how much money do you say you receive from selling permits. Without that, the form is actually pretty meaningless because it would never catch cashier or machine error. It would only catch theft. If Court has no more questions at this point, I'll reserve the rest for rebuttal. Thank you. We'll hear from the government. Good morning. May it please the Court, I'm Shelley Clemons, Assistant United States Attorney on behalf of the United States. The defendant makes a lot of argument regarding this form, and initially he stated that the judge should not have let this case go to the jury as it's insufficient and fundamentally vague or ambiguous. However, that argument was never made down below. The defendant did preserve a general Rule 29 argument, which is a sufficiency of the evidence, but he never argued that as a matter of law down below that this form is fundamentally ambiguous or overly vague such that this case never should have gone to the jury. As such, this should be a de novo review to determine whether as a matter of law this form is fundamentally ambiguous. However, in this particular case, it makes very little difference whether we're looking at sufficiency of the evidence or de novo review or plain error because in this particular matter the form is so clear and precise that there's no way it could be considered to be fundamentally ambiguous. Well, I disagree with that, meaning it's very clear and very precise in the sense that it says, okay, currency and coin, and it tells you how many hundreds are in the drawer and so on, and it says as part of the form daily transaction total of $1,314. On the other hand, daily transactions is in a little box that says user end of shift tape breakdown, which, in other words, what's on the tape, not what should have been on the tape. I've got two questions. One is it's clear that he was stealing, and it's clear that if this form had said, here's how much money I took in, he would have lied. So no doubt but what he would have done had the form been absolutely clear. But I'm having trouble seeing on the form anything that makes it clear that he's being asked to state what he took in that he should have reported as distinct from what was actually in the cash register. Where is it that says anything other than what's in the cash register at the end of the shift? You're correct, Your Honor. It doesn't state those specific words there. However, that's not. Okay. Well, let me ask. I'm correct. I'm asking you very specifically. Where on the form is there a question or an implied question that says, tell me anything other than what is in the cash register at the end of the shift? Well, Your Honor, if you look at the end-of-shift transaction, which is the little box, and if you look at Exhibit 18A, which I believe is page 92 of the excerpts of record, there is a section that asks about what's in the drawer, Sections 1 and 2, and then there's the end-of-shift action there where it talks about less voids, less credit cards, and it also talks about overages and shortages. And that, Your Honor, would seem to say that that's where you would account for the differences between what the cash register tape says what should be in the drawer as opposed to what is actually in the drawer. But as I understand what happened here, the tape matches what's in the drawer. His problem is he's skimming. That's to say he's not putting it onto the tape. He's doing more than just skimming, Your Honor. He's also manipulating the data that goes into the computer. I understand. No, that's exactly the point I'm making. He's not very sophisticated about this, but he's at least sophisticated enough to know that the tape is supposed to match what's in the drawer. So overages and shortages, comparing what's in the drawer to the tape, is going to be zero. I mean, he stole the money. There's no question of what he stole the money. But I'm trying to figure out where on the form does it say you're supposed to report something other than what's in the drawer. Well, Your Honor, I think using the test that's required, which is that of what ordinary men or persons of ordinary intelligence would interpret the form to mean, it wouldn't be what should be in the drawer. It would be what should be in the drawer as opposed to what you actually put in the drawer, leaving out what you stuffed in the pocket and how you manipulated the drawer so that you could make the two tapes match up. Yeah. I mean, the defendant's argument is in one sense counterintuitive because it's very clear that he's stealing  and it's very clear that this form is designed as some sort of a financial control device. I got all that stuff. What I'm trying to figure out is, does this form in any clear way say, on this form you're supposed to report what was supposed to have come in as distinct from what did come in? And I'm having trouble finding on the form any place that tells me, this tells the government what should have come in as distinct from what's in the drawer. Where does it say something other than, here's what's in the drawer at the end of the shift? Well, Your Honor, it's implied by the fact. No, I'm asking you, I'm not asking you implied. I'm asking you, is there anything on the form that says that? No, Your Honor. There's nothing on the form that says that other than it does ask for your collection form fees, which would be, you know, how much currency and coin is there, how many checks, how many credit card requests, and then you actually compare it to the transactions below, which is the types of money that should be there based on the number of permits sold. Now, wait a minute. No, no, no. Hold the phone. You compare it to something which is the amount that should be there? Tell me exactly what you're saying. Certainly. On this particular form, there are three sections. The first part is the currency, coin, checks, and credit card section at the top. Yeah, I got that. In the middle on the left, there's the collection form fees. It indicates he sold this many permits of this type at this amount of money, so there should be this amount of money over there. And on the right is the indication of shipping. No, no, wait a minute. It says fees. Okay. And the amount of money there is a total of $1,314, which is the same amount that's on the right. Okay. I got that. Okay. Yeah. So if the defendant properly fills out that form, filling in the number of each item he sold at the fees, then that should tell him exactly what should be in the drawer.  so there should be this amount of money over there. So you're saying collection form fees, when he says it's $1,314, you say that's the lie, that the fees were greater than that? Yes. Is that the lie? Not that the fees are greater than that, but he sold more in the I-94 section such that the amount he collected for those is greater than that, and that's what he didn't account for on the form. Let me ask you maybe the same question in a different way, because our view of this is obviously colored by the fact that he stole the money. Let's say it's an innocent mistake, that, in fact, he screwed up. He didn't charge as much as he should have. He just collected the wrong amount of money, but he accurately reported it, the money he collected on the cash receipts. Is that a false report? No, Your Honor. That would not be a false report, except in this particular case, that couldn't happen. So what's the difference in logic? Well, the difference is factually in this particular case, the cash register is very specific. You check in, this is the form that I am selling to this person, and it automatically enters in the fee that should be there. So if he makes a mistake on the change or giving it back, he still should have documented the proper number of forms collected there. What if he makes a mistake on the number of forms, and then it rolls over to the cash amount, and there's just a discrepancy there because he's actually made a mistake on the collection of some particular form? That is where the cash register tape then becomes useful, to collect what the machine shows should be there, based on the type of permits and the number of permits sold in each category, as opposed to what's actually in the drawer. So in order to make it come out right, he has to make a false statement in two categories. Is that right? That is correct, Your Honor. And that's why the government does not agree that this is just about whether he properly documented the monies collected. It's also about whether he properly documented the number of forms that were sold. Nick, I'm missing that, but that wasn't quite the theory at trial, was it? Well, certainly the theory at trial was that by falsifying the forms as to the money, that enabled him to continue his embezzlement or theft of money from the government. And I credit your explanation here, except that that wasn't the case that was tried to the jury. Well, Your Honor. And maybe I'm missing something, but the case that was tried to the jury seemed to me, it's false to say, to enter the cash receipts, when you knew that there should have been more in there, or they didn't match the collections. But there was sufficient, there was a number of testimony at the jury trial, Your Honor, that what they showed documenting was him manipulating the cash register, both that it showed a different number of I-94s sold, as well as a different amount of money to cash. And that's where he actually was pretty sophisticated in his theft, because he didn't try to manipulate it per his admissions prior to trial. He didn't try to manipulate it as to the other forms, because there was other documentation to support those, such that he couldn't have gotten away with it. The I-94s truly were the only area where he could manipulate it and get away with it. I mean, I'm not trying to get him out of his bad behavior. This is to say, he stole, he got caught, he got convicted for stealing, and he got sentenced for stealing. That's count one. Yes. So that's all beyond dispute. But the indictment says, as to the lying, he, quote, falsely reported that he had collected a certain amount. I can understand that there's an implicit on the form that he collected this amount, but I have trouble seeing on the form anything other than an implication that you're not supposed to steal and you're supposed to have on this what you actually reported. But the form just seems to say, what's the tape say? What's in the drawer? And he's taking money and he's not putting it onto the tape, and he's not putting it into the drawer, so the tape and the drawer match. What's the word transmittal mean? What are we transmitting? I mean, is there any testimony as to what that means? That's the heading at the top of the form. There was no testimony as to the interim, but the transmittal is transmitting the purpose and the form in the context of which it's given, is to keep track of the amount of monies collected. That's right. By the court at this particular station on a day. Right. And I believe, Your Honor, the testimony was also that this wasn't a situation where he would end his shift and it was supposed to be this much money left in the drawer at the shift. He would actually clean out the drawer, put together the form, and all the cash was put together in one packet and then deposited in the safe. Right, which makes perfect sense to me that this form then accompanies that money so that when you have this form and that money, you can then figure out whether money is stolen later. That's what the term transmittal suggests to me, that the form is not designed to catch the guy who's stealing by not entering it onto the tape and putting the money in his pocket. It's designed to catch the guy who takes the money out of the safe afterwards because at that point the money doesn't match what's on the transmittal form. I disagree, Your Honor, because the purpose of the form is initially to show the intake of the amount of money during that particular agent's shift at the cash register, not the amount of money that he bothered to put in the drawer as opposed to what he pocketed in. This is a different question, and it's a practical one rather than sort of what's the words and so on. Why did you charge lying as well as theft? I mean, you had him dead to rights on theft. You convicted him on theft. What did all these lying counts add from the standpoint of the government? Why did you do it? Your Honor, I was not the charging attorney or the trial attorney in this case. However, in this particular instance, every time he filled out that form falsely, he committed another offense. No, no, that's not my question. You just assumed the conclusion. I'm asking why the government indicted for all of these, called these lying counts. Because there's sufficient evidence to prove it, Your Honor. That's not the answer either. Okay. You may not know if you didn't. I guess to use a football. You might not know. That could be an answer. Yeah. I mean, that's a fair answer, sure. In football, you might be flagged for piling on, I guess. Right. But seriously, it's a, especially with this kind of form, it really does add a lot of charges to what is fundamentally a theft case. And I know you say, so what? But. Well, I guess, Your Honor, in purpose, in relation to this form, if we're talking about what the test is, which is what a man of ordinary intelligence would have believed this form to mean, it doesn't matter if he comes up with one reason, but we believe it's another reason. And as the Strome case, which the defendant pointed out in their reply brief, says, it's not for the defendant to twist it. But, you know, let me do it this way. Let's say some interrogator asks me a question that's a little bit clumsy. And it doesn't really ask what I know he wants me to ask. And I answer truthfully the clumsy question in the clumsy form in which it was asked, avoiding admitting that I stole something. And now we've got the transcript, so we know exactly what was asked and exactly what was answered, and he's an FBI guy, and you're now charging me with lying to the FBI guy. Does the government get to say, well, you knew what he was asking, or what he wanted to ask, he was just kind of clumsy, so nonetheless you lied to the government. I don't think you'd indict on that. He knew what the government wanted to know. The government wanted to know, did you steal money? Of course he knew what the government wanted to know. That's not it. The question is, what's the question the government asked? Well, Your Honor, I would state, and for this particular matter, when you're interviewing somebody and you're talking about a perjury or a false statement case in relation to a question asked, and certainly what you knew what the agent was asking could be important, but in this particular case, he had training as to these forms. He wouldn't have gotten his little I.D. had he not had the training on the form. He knows the purpose of the form, which is to document the monies collected, not the monies he bothered to put in the form. So in that particular instance, he certainly had enough information there to know precisely what the government was asking for when they asked him to fill out that form. Well, what the government wanted to know, as distinct from what the government asked, those are two different propositions. I find this actually kind of hard. Okay. Thank you very much. I realize there are other issues as well, but we've confined our argument to this. If you have a minute to rebuttal. Just a few brief points. You're absolutely correct that the bottom part of the form is not part of this case because that's not the basis for the charge and indictment. If you read the indictment, it talks about the false statements in the coin and currency section. Well, no, but of course it's part of the form because the question is what did you think he was being asked? Well, it's a context, but it isn't the basis for the charges. If, in fact, he did make a false statement on the bottom half under the grand jury's charge that says this false statement was in the coin and currency section, you couldn't convict him. Second, there's testimony at trial that says, as to the bottom half, it is the supervising agent, again, that the cashiers always rely on the cash tape to fill out the bottom section. And third, about the purpose. The government says, just said, that Lopez knew the purpose was to make sure money wasn't stolen. But there's nothing in the record that says that purpose. There's nothing on the form. There's nothing in the instructions. And what this Court did in Culliton, that was a case where it said we can convict this individual of making knowingly false statements because the purpose was clearly and explicitly stated in the form and in the instructions. And that's the key difference here. He doesn't know that purpose. It's not explicit. It's not clear. A valid purpose, a reasonable purpose, is to catch the machine error. And that's exactly what happens when you have the amount that's in the cash register versus what the cash register tape says. So taking a look at the Culliton case and how they compared it to the Monopod case is important for the Court. Could I just make a brief comment about, 30 seconds, about the statements? No, because the government didn't have, it's a rebuttal. And it would be unfair to the government. If you do that, I'm going to have to let the government respond. Well, I wouldn't mind, but I won't take the Court's time for that. No, I think those issues are pretty well presented in the briefing. They're interesting issues. And time, I'm sorry, time didn't permit them to get into it. But I think these other issues require a little more explanation from both these. So that would have been very helpful to the Court. The case is argued to be submitted for decision.
judges: Thomas, McKeown, Fletcher